## Jules Schneider et al. v. Leonard Sellers et al.

No. 1374.   Decided January 16, 1905.

**1.—Corporation—Notice—Director.**

A corporation taking a conveyance of property from two of its directors in consideration of its corporate stock was not charged with notice of fraud affecting the title, though known to such grantors, where it was not known to the other directors. (P. 387.)

**2.—Corporation—Title to Land—Innocent Purchaser.**

A corporation, though not authorized to take and hold title to land, acquires, by purchase and conveyance to it, a title subject only to be defeated by proceedings by the State to declare a forfeiture, and against other parties than the State can defend its title as innocent purchaser against a claim that the right of its grantor was voidable for fraud, where its own purchase was made without knowledge of that fact. (Pp. 387-389.)

**3.—Husband and Wife—Separate Property—Mortgage—Release—Sale.**

Land which was the separate property of the wife having been mortgaged along with personal property of the husband to secure his debt, the mortgagees and the husband effected a release of this personal property from the mortgage by taking a conveyance of it from the husband and reconveying to him with a mortgage back. Held, that the release of the personal property from the original mortgage released from it also the wife's separate property; and the mortgagees, having sold and bought in the wife's property under such mortgage and conveyed same to an innocent purchaser, became liable thereby to the wife for the value of the lands so caused to be lost to her. (Pp. 389-391.)

**4.—Judgment—Fraud—Constructive Trust.**

The widow and guardian of the children of a decedent combining by fraud to procure a decree adjudging separate real estate of the husband to be community property and setting aside a part of same to the widow, the latter became charged with a constructive trust of the title for the benefit of the children, and they, on her conveyance to them of her rights, could maintain such action as she herself could have done to recover the land or judgment for the value of it from those who had caused it to be lost by transfer to an innocent purchaser under color of a sale under a void mortgage. (P. 390.)

**5.—Limitation—Amendment—New Cause of Action.**

A suit seeking recovery of land and, in the alternative, judgment for its value against the defendant who had wrongfully sold it, in case it was

found to be held by an innocent purchaser, was on the same cause of action as that set up by a subsequent amendment seeking the same form of recovery but specifically pleading the facts making the sale unlawful, and was sufficient to interrupt limitation.    (P. 391.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Ellis County.

Sellers and others sued Schneider and others and recovered judgment which was affirmed on appeal by defendant, who thereupon obtained writ of error.

 *Wm. P. Ellison, Chas. Fred. Tucker, and Templeton & Harding,* for plaintiffs in error.—A corporation can acquire land, and become an innocent purchaser, although such land be not necessary to its business, when it acquires such land by the issuance of stock, in the formation or organization of the corporation.   In any event, such corporation can hold the land as an innocent purchaser, and no individual can attack the conveyance.   The State alone can complain, and even then the statute recognizes the equity of the stockholders in the value of the property. Constitution, art. 12, sec. 6; Rev. Stats, arts. 651, 749; Cole v. Adams, 92 Texas, 171; Russell v. Railway Co., 68 Texas, 646; Schwab Cloth Co. v. Clanuch, 29 S. W. Rep., 922; Matthis v. Pridham, 1 Texas Civ. App., 88; Frenkel v. Hudson, 2 S. W. Rep., 758; 3 Texas Notes, 864; Sayers v. Texas L. & M. Co., 78 Texas, 245.

The court erred in admitting, over the objection of defendants, the testimony of W. C. Walker and other witnesses to the effect that at the time of the execution by W. C. Walker and his wife S. E. Walker, of the trust deed upon the land in controversy to W. B. Greenlaw, trustee, it was agreed and understood between the said W. C. Walker and S. E. Walker and said W. B. Greenlaw that if the trade for the Barton Bros. cattle should fall through, or should not be effected, the said trust deed was to be surrendered and canceled; the effect of such testimony being to engraft upon said trust deed a parol condition and thereby to add to, vary and contradict the said written deed of trust by adding thereto a parol condition not contained therein, the effect of which would be to defeat the legal effect of said deed by showing the subsequent happening of the condition upon the happening of which, according to said parol condition (testimony) the said trust deed was to be surrendered and canceled.    Galveston H. & S. A. Ry. Co. v. Pfeuffer, 65 Texas, 71; Beaumont Car Works v. Improvement Co., 4 Texas Civ. App., 257; 3 Notes on Texas Reports, 113.

A corporation is not chargeable with notice of such facts as are known to its officer or other agent, acting at the time in an adverse capacity, in his individual interest.   Mathis v. Pridham, 1 Texas. Civ. App., 88; Taylor v. Callaway, 7 Texas Civ. App., 461; 1 Am. and Eng. Enc. of Law, 2 ed., p. 1144; Frenkel v. Hudson, 60 Am. Rep., 736; Allen v. Railway Co., 15 Am. St. Rep., 185.

[On motion for rehearing.]—We urge, first, that this honorable court erred in holding that the cause of action upon which defendants in error have recovered their judgment in this court against these plaintiffs in error is not a new cause of action to that pleaded by defendants in error by their amended petition filed June 7, 1897. Phoenix Lumber Co. v. Houston Water Co., 94 Texas, 456; Lynch v. Ortleib, 87 Texas, 590; Gulf C. & S. F. Ry. Co. v. Richards, 11 Texas Civ. App., 102.

*F. L. Snodgrass* and *H. T. Sims*, for defendants in error.—The property of S. E. Walker having been pledged to secure the debt of her husband, and the said debt being secured by a deed of trust upon the community property of W. C. Walker and herself, said S. E. Walker had the right to require Schneider and Davis to exhaust the said community property securing said debt before resorting to her separate property. James v. Jacques, 26 Texas, 320; Schneider v. Sellers, 61 S. W. Rep., 544.

It would be an anomaly in equity to say that the State of Texas by a proceeding in court could forfeit its right to this land, if legal title had vested; and to assert in the same connection that the company in a court of equity, with its hands covered with this violation of law, and public policy, could resist the assertion of legal title by defendants in error. Good faith can not be based upon a violation of law. Lyons-Thomas Hardware Co. v. Manufacturing Co., 86 Texas, 143; Ware v. Hylton, 3 Dall. (U. S.), 240; Phillips v. Dobbins, 56 Ga., 617; Case v. Kelly, 133 U. S., 21; Coleman v. San Rafael Turnpike Co., 49 Cal., 517; Hale v. Darter, 10 Humph., 95.

BROWN, Associate Justice.—This suit was begun by the defendants in error in the District Court of Ellis County, on the 28th of August, 1896, against Jules Schneider, Alfred Davis and the Schneider-Davis Company, a corporation created under the laws of this State. The case was tried on the fourth amended petition of the plaintiffs. The object of the suit was to set aside two judgments rendered in the District Court of Ellis County; the first being styled Wade House against W. C. and S. E. Walker, in which the community property of Teoli Sellers and S. E. Walker was partitioned between the plaintiffs therein, Leonard Sellers, Obani Sellers and Frederick Sellers, the children of the said Teoli Sellers and S. E. Walker. Judgment was entered in that case on the 16th of June, 1883, and the lands in controversy in this suit were treated in that case as the community property of the said Teoli Sellers and S. E. Walker, who was his surviving widow and had subsequently married W. C. Walker. In that suit the homestead was set apart to S. E. Walker, and subsequently another suit was instituted by Báscom McDaniel, as guardian of the said Leonard, Obani and Frederick Sellers, to partition and divide the said homestead on the ground that

its use had been abandoned as such by their mother, and judgment was rendered by agreement in that case dividing the lands equally between the plaintiffs and Mrs. S. E. Walker. It was alleged in the petition that the property was in fact the separate property of Teoli Sellers and that the judgments were procured by concealment of the truth and by inducing the court to enter judgment equally dividing the property between the children and the surviving wife of Sellers, the said children being then minors and not of age sufficient to protect themselves in their rights; wherefore it was sought to set aside the said judgments and, in addition thereto, the plaintiffs set up and claimed that they were owners of the lands now in controversy as the heirs of the said Teoli Sellers, and also by virtue of a deed executed by S. E. Walker and her husband, W. C. Walker, conveying all of their interest in the lands to the plaintiffs in this suit, which deed was dated the 27th of March, 1896.

The said petition further alleged, that on the 20th day of September, 1886, S. E. Walker and W. C. Walker executed and delivered to one Greenlaw, as trustee for the benefit of Jules Schneider and Alfred Davis—a firm acting under the name of Schneider & Davis—a deed of trust upon the said land to secure a note for $2831.25 made and executed by the said W. C. Walker to the said Schneider & Davis, of which $1831.25 was a pre-existing debt due from Walker to Schneider & Davis, and $1000 of the said amount was by agreement to be furnished to the said W. C. Walker with which to buy a certain stock of cattle, with the understanding that if the said cattle were not bought by the said Walker the deed of trust should be returned and canceled. It was also alleged, that the said deed of trust embraced a stock of cattle and other personal property of value more than sufficient to pay the whole of the note secured by the deed of trust, which personal property was the community property of W. C. Walker and S. E. Walker, and the debt secured by the deed of trust was the community debt of the said W. C. and S. E. Walker. It was alleged that subsequently to the making of the deed of trust the cattle were not purchased as was agreed upon and that the $1000 was not furnished to Walker in accordance with the terms of the agreement. It was further alleged that Schneider & Davis, with the intent to release the cattle embraced in the said deed of trust from the lien thereof, purchased the said cattle from W. C. Walker for $1000, and, at the same time, sold the same back to the said W. C. Walker for $1000, taking his note and a deed of trust thereon to secure the payment of it, whereby the lien of said deed of trust upon the land was released, because the said land was security only for the debt, Mrs. Walker not being legally bound for the payment of it. It was alleged that Schneider & Davis caused the land to be sold under the deed of trust and purchased it at the sale and subsequently conveyed it to the corporation, the Schneider-Davis Company. The petition charged that neither Schneider & Davis nor the Schneider-Davis Company were innocent

purchasers of the land; it prayed for the recovery of the land and rents thereon, and, in case it should be held that the Schneider-Davis Company was an innocent purchaser so that the plaintiffs could not recover the land from it, then the plaintiffs asked for a recovery against Schneider & Davis of the value of the land at the time that they sold it. The petition is very long, with elaborate allegations, but we believe that this is a substantial statement of all necessary for the determination of the questions presented in this case.

The defendants in error answered by a general demurrer and by thirty-two exceptions; also by a plea of not guilty and pleaded the statutes of limitation of two, three and four years. Defendants each pleaded that they were innocent purchasers in good faith for a valuable consideration; that they had made valuable improvements upon the lands, stating the amount, and prayed that in case they should lose the land that they be allowed the value of the improvements. The defendants, Schneider & Davis, also pleaded that they had, at the instance of W. C. Walker, paid off and discharged an incumbrance upon the lands in controversy which was held by the guardian of the minors, describing the debt so discharged, and they asked that in case the plaintiffs recovered the land from them that they might be subrogated to the rights of the holder of that incumbrance and that the same be enforced in their favor.

In reply to the defendants' pleadings, the plaintiffs pleaded, among other things, that Mrs. S. E. Walker was a married woman when the transactions occurred, and had so continued from the time the deed of trust was made up to the time of the institution of the suit; and that each of the plaintiffs was a minor until shortly before the institution of the suit; that is, that Leonard Sellers became of age December 16, 1895; that Obani Sellers arrived at majority on the 11th day of October, 1897, and that Frederick Sellers became twenty-one years old on the 14th day of July, 1899.

From the statement of facts as given by the Court of Civil Appeals, the special verdict returned by the jury, and the undisputed evidence, we make the following statement of the facts necessary to a decision of the questions presented to this court.

Teoli Sellers and S. E. Sellers (defendant in this suit under the name of S. E. Walker) were husband and wife, and, during their marriage, the land in controversy was purchased by Teoli Sellers and paid for with his separate funds, but there is no recitation in the deed to show that fact. During their marriage Sellers and his wife had born to them three children: Leonard was born December 16, 1874; Obani was born on the 11th day of October, 1876, and Frederick was born on the 14th day of July, 1878. Teoli Sellers died on the 11th day of October, 1881, leaving surviving him his wife and three children above named. Afterwards Mrs. Sellers intermarried with W. C. Walker. On June 16, 1883, Wade A. House, acting as the next friend and as prospective guardian of the three minors, Leonard, Obani and Frederick

Sellers, filed in the District Court of Ellis County a petition against S. E. Walker and W. C. Walker for partition of the estate of Teoli Sellers and his wife, which consisted in part of separate property of the said deceased husband, and in part of community property of Mrs. Walker and her deceased husband. The defendants appeared and answered, and on the 28th day of September, 1883, a judgment was entered by agreement partitioning between the said children and Mrs. S. E. Walker all of the property except the homestead and an adjoining tract which were set aside to her as the surviving wife for her use. The commissioners' report of partition was made and acted upon by the District Court in 1884. On February 2, 1887, Bascom McDaniel, guardian of the minors, Leonard, Obani and Frederick Sellers, filed a petition in the District Court of Ellis County against S. E. and W. C. Walker, alleging that Mrs. Walker had abandoned the land described in the petition as a homestead and praying that the said land might be divided equally between the said minor children and Mrs. S. E. Walker, and on March 11, 1887, an agreed judgment was entered partitioning the said land equally as prayed for. The lands in controversy were by the two judgments adjudged to Mrs. S. E. Walker as being community property of herself and Teoli Sellers, but the land was in fact the separate property of said Teoli Sellers. Upon a special issue submitted by the court the jury found that the two judgments were procured by false representations and concealment of the true facts by S. E. Walker and W. C. Walker, but that Schneider & Davis nor the Schneider-Davis Company did not know of the misrepresentations or fraud in the procurement of the judgment at the time that they acquired their several rights in the property.

On September 20, 1886, W. C. Walker was indebted to Schneider & Davis in the sum of $1831.26, and borrowed $1000 from them giving his note to Schneider & Davis for $2831.26, to secure which W. C. and S. E. Walker executed and delivered to W. B. Greenlaw a deed of trust on the land in controversy and upon hotel furniture and a stock of cattle and horses. The $1000 was not advanced by Schneider & Davis at the time, but when the trust deed was made it was agreed that the money should be advanced to Walker for the purpose of buying "the Barton stock of cattle," and if he should not buy that stock of cattle then the deed of trust was to be canceled. Schneider & Davis advanced $500 in cash to Walker and gave a check for the balance, which was not cashed but was returned to Schneider & Davis; Walker did not purchase the Barton stock of cattle. On the 23d day of April, 1887, Schneider & Davis made a trade with W. C. Walker by which the latter sold to them the cattle embraced in the deed of trust for $1000, and Schneider & Davis immediately resold the cattle to Walker for the same sum and took a deed of trust on the cattle to secure his note. This transaction was made with the purpose to release the cattle from the deed of trust

of September 20, 1886, and was without the knowledge or consent of Mrs. Walker. At that time the cattle were worth the sum of $3500.

On the 27th day of March, 1896, S. E. Walker, joined by W. C. Walker, by deed duly executed conveyed the land sued for to Leonard, Obani and Frederick Sellers and assigned to them all claims for damages and all claims whatever in her favor against Jules Schneider and Alfred Davis.

In the year 1889 Schneider & Davis caused W. B. Greenlaw, the trustee in the deed of trust upon the land in controversy, to sell it under that instrument, and Schneider & Davis bought the land for $100. They did not sell any part of the personal property embraced in the deed of trust.

Before the making of the deed of trust of August 20, 1886, W. C. Walker and J. F. Taylor purchased from Bascom McDaniel, the guardian of the minors, Leonard, Obani and Frederick Sellers, a stock of cattle and took their notes amounting to the sum of $2232.75, to secure which S. E. Walker and W. C. Walker gave a deed of trust on the land here sued for and upon the stock of cattle. The cattle at that time were worth $5600, and J. F. Taylor was solvent, but Walker was insolvent. Schneider & Davis voluntarily took up the notes given by Walker and Taylor to McDaniel, but did not attempt to enforce them against the cattle upon which they had the deed of trust, nor against Taylor.

The undisputed evidence and the findings of the jury show that Schneider & Davis were engaged in a wholesale grocery business and had acquired large assets consisting of lands and other property, including the land here sued for. They, with other persons, agreed to form a corporation for the purpose of continuing the business, and it was agreed that the corporation, when formed, should take over the assets of Schneider & Davis, including their lands, for which Schneider & Davis were to receive stock in the corporation; after which the charter was procured, the corporation organized, and, in pursuance of the agreement, the assets of the firm, including the lands in controversy, were transferred by Schneider & Davis to the corporation. On the 12th day of March, 1892, Schneider & Davis transferred to the corporation the land here sued for at a valuation of $4000; but upon special issue submitted on that question, the jury found that the land at that time was worth $5666.75. No director of the corporation, except Jules Schneider and Alfred Davis, had any knowledge of the acts of Schneider & Davis relied upon to defeat the sale under the deed of trust of September 20, 1886.

The original petition filed August 26, 1896, sought only to recover the land sued for. On June 7, 1897, the first amended original petition was filed, in which the plaintiffs prayed for recovery against Schneider & Davis for the value of the land in case it should be held that the corporation was an innocent purchaser. The fourth amended original petition, upon which the case was tried, set up in detail the facts with regard to the transaction between Schneider & Davis and W. C. Walker by which the cattle embraced in the deed of trust of September 20, 1886,

were released from the lien of that instrument and prayed that, in case the Schneider-Davis Company should be held to be an innocent purchaser, the plaintiffs might recover from Schneider & Davis the value of the cattle. In this petition also the plaintiffs set up their title to the land by deed from W. C. Walker and S. E. Walker to them dated March 27, 1896, in which Mrs. Walker also assigned all claims for damages against Schneider & Davis.

The finding of the jury and the undisputed facts of this case leave no question that the Schneider-Davis Company was a purchaser of the land in question in good faith, for a valuable consideration paid at the time, and without notice of any of the facts upon which this action rests, unless a want of capacity to acquire and hold land will prevent it from defending its purchase by the plea of bona fide purchaser. The other directors of the corporation being ignorant of any of the facts alleged against Schneider & Davis, the corporation will not be charged with notice because of the knowledge of Schneider & Davis, from whom it acquired the property, although they were directors of the said corporation. Frenkel v. Hudson, 2 So. Rep., 758; 87 Ala., 158. The case is directly in point upon the proposition above stated.

Conceding for the sake of argument that the corporation, Schneider-Davis Company, was not empowered by its charter to purchase the land in question under the facts, the question arises, did that want of authority destroy the good faith of the transaction so that the corporation can not defend itself as a purchaser in good faith? This is a novel question, and by careful search we have been unable to find any authority which bears directly upon the question. The case nearest in point that we have been able to find, is Cram v. Mitchell, 1 Sanford Ch. Rep., 251. In that case the agent for the sale of land bought it for himself at an inadequate price, thereby perpetrating a fraud upon his principal as well as upon the creditors of the estate to which the land belonged. It is true that the purchaser in that case could not by law acquire the title from his principal, but the decision of the case is not rested upon a want of power, but upon the bad faith of the agent which constituted a fraud upon his principal. The doctrine is announced in 2 Pomeroy's Equity, section 762, in this language: "It is an elementary doctrine, therefore, that, independently of notice and valuable consideration, any want of good faith on the purchaser's part, any inequitable conduct of his, such as fraud committed in the transaction against his own immediate vendor or grantor, or a participation in an intended fraud against the creditors of his vendor or grantor, or his obtaining the transfer through misrepresentation or concealments which are inequitable, although not amounting to positive fraud, and the like, will destroy the character of bona fide purchaser, and defeat the protection otherwise given to it." In the case under consideration there was no fraud practiced upon nor misrepresentation made to Schneider & Davis nor their creditors, nor was there any bad faith toward any person, hence the rule announced is not applicable to the case under consideration.

Counsel for appellees rely upon Ramsdell v. Morgan, 16 Wendell, 574; Keutgen v. Parks, 2 Sanford S. C., 60; Wailes v. Couch, 75· Ala., 134; Carlisle v. Hill, 16 Ala., 398; Smith v. Lehman, 85 Ala., 394. The cases of Ramsdell v. Morgan and Keutgen v. Parks were virtually overruled by the Court of Appeals of New York in Williams v. Tilt, 36 N. Y., 325, wherein the court held that usury in a contract under which title was acquired could only be set up by the party to the contract. We think this reasoning is sounder than that· of the courts which held to the contrary.

In all of the cases relied upon by the defendants in error the very contract or conveyance under which the person claiming to be a bona fide purchaser had acquired title to the property was tainted with usury, and the controversy was between such person or some one who was in privity with him and the wrongdoer. Those cases are in harmony with the rule expressed by Mr. Pomeroy as above quoted. The difference between the cases cited and the one at bar lies in this: that here the conveyance of Schneider & Davis to Schneider-Davis Company is free from moral taint or illegality as between the parties thereto. It is well settled that a purchase of land by a corporation which is not authorized by its charter to acquire and hold real estate is not void but is good and binding as to all the world except the State. Russell v. Railway Company, 68 Texas, 652. In the case cited, the Texas & Pacific Railway Company had purchased of the receiver of the Memphis & El Paso Railway Company a large body of land which had been sold by a sheriff in the State of Texas under a judgment against the Memphis & El Paso Railway Company; the land was purchased by B. H. Epperson, whose representatives and heirs were parties defendant in the case cited. The defendants in that case pleaded that the railway company had no authority to hold the land, therefore acquired no title by its purchase; but our Supreme Court held that as to the defendants the purchase was valid and the title sufficient to entitle the railway company to recover the land. If this suit were by the Schneider-Davis Company against Schneider & Davis to recover this land, the objection here made to the title could not avail Schneider & Davis, yet it is claimed that these plaintiffs can avail themselves of a defect which the parties could not themselves have used as a defense against the recovery of the property. The facts of this case do not bring it within any one of the rules announced by the authorities cited in the briefs of defendants in error.

Under the present law of this State, enacted March 24, 1893, the corporation had fifteen years from the passage of the law to sell the land and the time has not yet expired. Rev. Stats., art. 749c. If the State should secure a declaration of forfeiture, the lands would be sold and the proceeds distributed to the stockholders. Rev. Stats., art. 749e. This shows that the holding of the land is not unlawful.

The honorable Court of Civil Appeals cites in support of its opinion, Case v. Kelly, 133 U. S., 21, in which a receiver of a railroad company brought suit to recover of certain persons lands which the latter had

received in trust for the corporation; the title being made to the defend-
ants directly and vesting in them the legal title. The Supreme Court
of the United States held that courts would not assist a corporation
which had no power to acquire and hold real estate to recover that to
which it had no title. That case does not support the decision of the
Court of Civil Appeals, for here the legal title was vested in the defend-
ant, the Schneider-Davis Company, and it needed no action on the part
of any court to enforce a trust or executory contract in its favor. The
Court of Civil Appeals likewise quoted the following sentence of 2
Pomeroy's Equity, section 762: "The party claiming to be a bona fide
purchaser must come into a court of equity with absolutely clean hands."
There is nothing in the facts of this case as between the Schneider-Davis
Company and its vendor that is foul or offensive to a court of justice;
the transaction was entirely clean and fair.

A statement of the facts without argument distinguishes this from
the cases relied upon to support this judgment. We see no sound reason
why the corporation which has a title to land acquired upon a valuable
consideration without notice of any defect in the title should not be
allowed to defend its possession and right under the plea of innocent pur-
chaser. The Court of Civil Appeals erred in holding that Schneider-
Davis Company was not an innocent purchaser for value and without
notice, for which error the judgments of the District Court and of the
Court of Civil Appeals must be reversed.

The plaintiffs below prayed in the alternative for a recovery against
Schneider & Davis for the value of the land in case it should be held
that their vendee, the Schneider-Davis Company, was an innocent pur-
chaser and that the plaintiffs' right to recover the land should be thereby
defeated. The jury found that Schneider & Davis, with the intent to
release them from the deed of trust of September 20, 1886, purchased
the stock of cattle that was embraced in that deed of trust from W. C.
Walker, and at once resold them to the said Walker. The land in con-
troversy, regarded as the property of Mrs. S. E. Walker, was a surety
for the debt of W. C. Walker to Schneider & Davis, and when the latter
released the community property of W. C. Walker and wife from the
lien of the deed of trust, the land was thereby released. Wofford v.
Unger, 55 Texas, 483; Durrell v. Farwell, 88 Texas, 98. The release
of the land from the lien of the deed of trust terminated the power of
the trustee to sell the same, and the subsequent sale which was made
by the trustee for the benefit of Schneider & Davis was void and con-
ferred no title upon Schneider & Davis, but the deed of trust and the
sale conferred upon Schneider & Davis the apparent title to the land,
whereby they were enabled to convey to the Schneider-Davis Company,
a bona fide purchaser for value, the legal title to the land, which con-
stituted a good defense against the action of the plaintiffs below for the
recovery of the land.

Under the state of facts shown in this case, if Mrs. Walker had been
the real owner of the land in question she would have had the right to

recover from Schneider & Davis the value of the land which they conveyed under the void deed of trust to the Schneider-Davis Company. 2 Pomeroy's Equity, sec. 1051; Boothe v. Fiest, 80 Texas, 141.

Having secured the title to the land by fraud through the judgments entered in the District Court of Ellis County, Mrs. Walker held the land charged with a constructive trust in favor of her children. 2 Pomeroy's Equity, sec. 1053. Mr. Pomeroy says: "In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust."

The question arises, can the plaintiffs recover from Schneider & Davis for the value of the land which they acquired under the deed of trust from Mrs. Walker? By their unauthorized and wrongful sale and purchase for themselves of the land under the void deed of trust, Schneider & Davis secured to themselves the apparent title to the land, but they took it subject to the trust under which Mrs. Walker held it and stood in the same relation to the real owners of the land that Mrs. Walker occupied before they acquired her title. If Schneider & Davis had not sold the land the real owners could have recovered it from them, and since they, by their wrongful acts and sale to themselves through the deed of trust and then to the Schneider-Davis Company, have put the land beyond the reach of the owners, the plaintiffs are entitled to recover from them the value of the land. 2 Pomeroy's Equity, sec. 1051. The author states the rule governing this class of transactions in the following language: "As a necessary consequence of this doctrine, whenever property subject to a trust is wrongfully sold and transferred to a bona fide purchaser, so that it is freed from the trust, the trust immediately attaches to the price and proceeds in the hands of the vendor, whether such price be a debt yet unpaid due from the purchaser, or a different kind of property taken in exchange, or even a sum of money paid to the vendor, as long as the money can be identified and reached in his hands or under his control. It is not essential for the application of this doctrine that an actual trust or fiduciary relation should exist between the original wrongdoer and the beneficial owner."

In support of the proposition that the owners of the land were entitled to the same rights against Schneider & Davis that Mrs. Walker would have been, we cite Norris v. Belcher Land and Mortgage Company, 82

S.‾ W. Rep., 500, 98 Texas, 176.   Norris owned the land under an unre-
corded deed; his vendor conveyed the land to another party who had
notice of the former deed and who executed to the Belcher Land and
Mortgage Company a mortgage upon the land to secure money borrowed,
thereby constituting the mortgagee an innocent purchaser with reference
to the prior conveyance.   Suit was brought to foreclose the mortgage
upon the land, making Norris a party defendant.   He pleaded that the
debt secured by the mortgage was usurious, and this court held that he
had the right to make that plea.   This was based upon the proposition
that his property being incumbered by the subsequent vendee in such
manner as to bind the real title to the land in Norris, was entitled to all
the rights and remedies that the maker of the mortgage could have
asserted against the debt.   It is not necessary that there should have been
any fiduciary relation between the children of Mrs. Walker and Schnei-
der & Davis to entitle the owners of the land to recover for the fraud
perpetrated in the transfer to an innocent purchaser.

Schneider & Davis pleaded the statute of limitations of two years in
bar of plaintiffs claim against them for the value of the land.   The suit
was filed September 26, 1896, seeking only to recover the land.   On
June 7, 1897, plaintiffs amended their petition and prayed for recovery
of the land, and in the alternative for recovery against Schneider &
Davis for the value of the land if it should be held that a recovery of
the land was barred by the plea of innocent purchaser by the Schneider-
Davis Company.   The fourth amended petition was filed December 4,
1902, in which the facts regarding the release of the cattle from the
deed of trust were first alleged.   Leonard, the eldest of the plaintiffs,
attained his majority December 16, 1895, less than two years before
the filing of the first amended petition, therefore none of the plaintiffs
was barred.   The cause of action against Schneider & Davis was to
recover the value of the land wrongfully sold by them.   The release of
the deed of trust upon the land, and the facts relied upon to establish
that issue, was not a new cause of action but a ground of recovery upon
the cause of action.   Landa v. Obert, 78 Texas, 46; Texas Elevator Co.
v. Mitchell, 78 Texas, 67; Lee v. Boutwell, 44 Texas, 152.

Our conclusion as to the effect of the special verdict renders it unnec-
essary to discuss other assignments of error, and all of the material facts
having been found by the jury, this court will enter such judgment as
the trial court should have entered.

It is ordered that the judgments of the District Court and the Court
of Civil Appeals in so far as they adjudge the land in controversy to
the plaintiffs, and in so far as they adjudge the rents for said lands
against Jules Schneider and Alfred Davis and the Schneider-Davis Com-
pany, be and the same are hereby reversed; and it is ordered that as
against the Schneider-Davis Company the plaintiffs take nothing, and
that the Schneider-Davis Company go hence without day and recover
from the plaintiffs all costs by it expended in all courts.

It is further ordered that Leonard Sellers, Obani Sellers and Freder-

ick Sellers recover from Jules Schneider and Alfred Davis the rent of the land for the years 1889, 1890 and 1891 at $405 per annum, and for the value of the land on March 12, 1892, $5666.50, in the aggregate $6881.50, with interest at 6 per cent thereon from March 12, 1892, to this date, with their costs in all courts.

*Reversed and rendered.*